UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN DRAGASITS,<br>CDCR #AR-2176,<br><br>　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>T. RUCKER; FIGUEROS; L.<br>MARSHALLL; K MITCHELL; V.<br>SOSA; T. AZENTE,<br><br>　　　　　　　　　　　Defendants. | Case No.: 3:18-cv-00512-WQH-AGS<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A(b) AND FOR FAILING TO COMPLY WITH FRCP 8** |

**I.　Procedural History**

On March 8, 2018, Stephen Dragasits ("Plaintiff"), currently incarcerated at the Richard J. Donovan Correctional Facility ("RJD") located in San Diego, California, and proceeding pro se, filed this civil rights action (ECF No. 1), together with a Request to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 2). On March 21, 2018, Plaintiff filed exhibits to his Complaint. (ECF No. 6.)

1

On May 10, 2018, Plaintiff's IFP Motion was GRANTED but the Court DISMISSED all the of the claims in this action with the exception of the Eighth Amendment claims against Defendants Marshall and Mitchell and the First Amendment retaliation claims against Defendants Rucker, Figueroa, Marshall, and Mitchell. *See* May 10, 2018 Order, ECF No. 7 at 9-10. Plaintiff was given the option to either: "(1) Notify the Court of the intention to proceed with claims against Rucker, Figueroa, Marshall, and Mitchell only; or (2) File an Amended Complaint which cures all the deficiencies of pleading noted" in the Court's Order. *Id.* at 10.

Plaintiff chose to file a sixty-seven (67) page First Amended Complaint ("FAC"), along with nearly five hundred (500) pages of exhibits. (*See* ECF No. 11.) In his FAC, Plaintiff no longer names Paramo, Stratton, Rojas, Stout, Frost, Aguirre, Voong, and Liu as Defendants. (*See id.* at 1-2, 8-12.) Accordingly, Plaintiff has waived all claims against these Defendants and they are DISMISSED from this action.[1] However, Plaintiff has re-alleged claims against Defendants Mitchell, Marshall, Rucker, Figueroa, and Sosa. In addition, Plaintiff has added Defendant T. Azente despite the fact that the Court did not provide Plaintiff with the option to add new defendants or new claims. *See id.*

## II.   Sua Sponte Screening per 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

### A.   Standard of Review

As the Court previously informed Plaintiff, because he is a prisoner and is proceeding IFP, his FAC requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Williams v. King*, __ F.3d __, 2017 WL 5180205, at *2 (9th Cir. Nov. 9, 2017) (discussing 28 U.S.C. § 1915(e)(2))

---

[1] *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

2

(citing *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B.  Rule 8

Complaints must also comply Federal Rule of Civil Procedure 8, which requires that each pleading include a "short and plain statement of the claim," FED. R. CIV. P. 8(a)(2), and that "each allegation must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1). *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). In addition to the grounds for sua sponte dismissal set out in § 1915(e)(2)(B), the district court may also dismiss a complaint for failure to comply with Rule 8 if it fails to provide the defendant fair notice of the wrongs

3

allegedly committed. *See McHenry v. Renne*, 84 F.3d 1172, 1178–80 (9th Cir. 1996) (upholding Rule 8(a) dismissal of complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant"); *Cafasso, United States ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (citing cases upholding Rule 8 dismissals where pleadings were "verbose," "confusing," "distracting, ambiguous, and unintelligible," "highly repetitious," and comprised of "incomprehensible rambling," while noting that "[o]ur district courts are busy enough without having to penetrate a tome approaching the magnitude of *War and Peace* to discern a plaintiff's claims and allegations.").

Here, Plaintiff's FAC is nearly seventy (70) pages long and attaches nearly five hundred (500) pages of exhibits. The Court finds Plaintiff's FAC, which is overly verbose and repetitive, along with the attachment of hundreds of documents, violates Rule 8 of the FRCP. Moreover, Plaintiff's FAC violates the Court's local rule that provides, in part, that "[c]omplaints by prisoners under the Civil Rights Act, 42 U.S.C. § 1983" are to be written on forms "supplied by the court" and "additional pages not to exceed fifteen (15) in number." S.D. Cal. CivLR 8.2(a). Accordingly, the Court DISMISSES the entire FAC on Rule 8 grounds, and for violating the Court's local rules, but will permit Plaintiff to file an amended pleading that complies with Rule 8 and S.D. Cal. CivLr 8.2(a).

C. Plaintiff's factual allegations

Plaintiff's cell was first searched by Defendants Rucker and Figueroa on February 9, 2015. (*See* FAC at 20.) During this search, Plaintiff claims Rucker and Figueroa "took possession of (3) items" that Plaintiff owned. (*Id.*) Plaintiff "refused to sign the cell search slip" because he claimed he rightfully owned this property and it was not contraband. (*Id.*) This led to an "argument" with Rucker and Figueroa which Plaintiff claims led to a retaliatory second search of his cell. (*Id.*) Rucker and Figueroa "did not provide a receipt

4

3:18-cv-00512-WQH-AGS

for the second search." (*Id.*) Later, "Officer Corona[2]," after speaking with Plaintiff, "wrote out a cell search receipt of all the items taken" during the second search of Plaintiff's cell. (*Id.* at 22.)

Plaintiff "wrote a CDCR 602 form against Defendants Rucker and Figueroa because of the personal property taken unlawfully." (*Id.*) However, Plaintiff claims this grievance was "intentionally destroyed or lost by Defendants Sosa, Azente, and Self[3] Appeal Coordinators as retaliation against Plaintiff's protected speech." (*Id.*)

On February 9, 2016, one year after the first search of his cell, Plaintiff claims that he had been sick and "took a decongestive." (*Id.* at 23-24.) Plaintiff left his cell that afternoon to "pick up his regular medication" which includes medication for Hepatitis C "that makes him drowsy." (*Id.* at 24.) Plaintiff returned to his cell and told his cellmate that he "was not going to dinner and was going to sleep." (*Id.*) Plaintiff "personally believes that there was an attempt to wake him up while he was sleeping" but the "medication did not allow him to wake up." (*Id.*)

While Plaintiff was sleeping, he "believe[d] he heard the cell door moving and then it eventually shut loudly." (*Id.*) Plaintiff claims when he woke up that evening he discovered that some of his property was missing, including "a pair of orthopedic shoes that were approved" by an "order of treatment by prison doctor" to "alleviate pain from the bottom of his feet." (*Id.* at 24-25.) Plaintiff could see his personal property "laying outside on the dayroom floor." (*Id.* at 25.) Plaintiff claims "it struck him building Officers Marshall and Mitchell came into his cell while he was sleeping and removed all" of Plaintiff's personal property. (*Id.*)

Later that evening, Plaintiff "saw Defendant Marshall was standing about 10 feet from his cell door." (*Id.* at 26.) Plaintiff claims he asked Marshall why his personal

---

[2] Corona is not a named Defendant.
[3] While Plaintiff refers to Self as a Defendant in these allegations, Self is not clearly identified as a Defendant in Plaintiff's original Complaint or in the caption of his FAC.

property was laying on the dayroom floor and she responded "are you going to come out now?" (*Id.*) Plaintiff alleges his personal property "was stolen, lost and/or destroyed by both Defendants Marshall and Mitchell." (*Id.*)

Approximately "10 to 12 minutes later," Plaintiff's cell was searched again by four unnamed correctional officers. (*Id.* at 28.) Plaintiff states that the four officers "did not know the situation of what actually occurred previous to them arriving or about the previously searched cell." (*Id.*) Plaintiff did inform them that his personal property had been taken, including his orthopedic shoes. (*See id.*) Plaintiff claims Marshall said "I need receipts" in "front of the other four officers." (*Id.*) Marshall also told Plaintiff that she "need[ed] to see chrono for the shoes." (*Id.*) Plaintiff returned to his cell. (*See id.*)

The following day, Plaintiff claims Marshall "ignored" him and refused to provide him with a receipt for his personal items. (*Id.* at 29.) Plaintiff alleges "this went on for months" and it was Marshall and Mitchell's "way of further retaliation against Plaintiff by withholding his personal property hostage." (*Id.*)

Plaintiff alleges that he "could not get treatment from the prison doctor to replace the orthopedic shoes without months of delay in treatment." (*Id.* at 30.) Plaintiff alleges that using "standard prison-issue shoes caused Plaintiff "constant pain" and resulted in an injury "that required surgery." (*Id.*)

D. Retaliation claims

Plaintiff alleges four separate actions taken by Defendants against him that were in retaliation for the exercising of his First Amendment rights. Plaintiff claims that he was retaliated against for arguing with Defendants and for filing administrative grievances.

A viable claim of retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) the inmate's protected conduct and that the adverse action (4) chilled the inmate's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate penological purpose. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-568 (9th Cir. 2005)).

As a preliminary matter, Plaintiff makes numerous references to "retaliation" throughout his FAC, but legal "labels and conclusions" like this "are not entitled to the assumption of truth" and fail to state a plausible claim for relief unless they are supported by "further factual enhancement" that "allows the court to draw the reasonable inference that [each] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79.

### 1. First cell search

Plaintiff alleges that the cell search conducted by Rucker and Figueroa on February 9, 2015 was conducted in retaliation "because the prior day there was an isolated incident between building 17 officers and one white prisoner attack." (FAC at 38.) Plaintiff further claims the search was "group punishment and deliberate retaliation treatment of the whole building 17." (*Id.*) These facts do not describe any individualized "protected conduct" on the part of Plaintiff. *Brodheim*, 584 F.3d at1269. Nowhere in his FAC does Plaintiff allege that he was personally engaged in "protected conduct" that led to the purported first retaliatory cell search on February 9, 2015. *See Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."). Thus, Plaintiff has failed to state a retaliation claim as to the first cell search.

### 2. Second cell search

Plaintiff claims Defendants Rucker and Figueroa conducted the second cell search on February 9, 2015 because "Plaintiff and Defendants argued about the first cell search property" that was purportedly taken from Plaintiff's cell. (FAC at 39.) Plaintiff claims Defendants "took an adverse action against Plaintiff's protected speech" by conducting a second cell search that "would chill or silence a person of ordinary firmness." (*Id.*) However, it is not clear that a verbal disagreement with the Defendants rises to the level of protected conduct under the First Amendment.

The filing of an inmate grievance is protected conduct, *Rhodes*, 408 F.3d at 568, as are the rights to speech or to petition the government, *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt*

1  *v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). Here, Plaintiff engaged in an argument with
2  Defendants but does not allege that the search was the result of his threatening to file a
3  grievance or actually filing a grievance against Defendants.

The Supreme Court held "a prison inmate [only] retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). The Court finds that Plaintiff has not sufficiently alleged facts to show that he was engaged in protected conduct at the time the second cell search was conducted, and therefore, he has failed to state a retaliation claim as to this search.

### 3. Claims against Sosa and Azente

Plaintiff claims that he submitted grievances relating to the taking and destruction of his personal property following the cell searches. (*See* FAC at 42-43.) However, Plaintiff alleges that Defendant Sosa "deliberately lied about having received any appeal regarding property." (*Id.*) He further claims Defendants Sosa and Azente denied "that any appeal exists for property in retaliation" for Plaintiff filing grievances. (*Id.* at 43.)

On April 30, 2015, Plaintiff submitted a CDCR 22 Inmate/Parolee Request inquiring as to why his previous grievances have not been answered. (*See* FAC at 100, Ex. E "Inmate/Paroleee Request for Interview, Item or Service.") On May 20, 2015, Defendant Sosa responded "a review of our records indicates no appeal regarding property in 2015 has been received, please indicate if this is a 2014 or 2015 appeal." (*Id.*) Plaintiff was instructed to "please review and submit appeal." (*Id.*)

Plaintiff responded on June 2, 2015 by indicating that he had "turned in (2) 602's in March of 2015" which "listed all items taken" from the cell searches. *Id.* Defendant Azente wrote back to Plaintiff on June 29, 2015 indicating "as previously mentioned, there is no record of RJDCF appeals office receiving appeals for you concerning the issue stated above." (*Id.*)

Plaintiff's allegations Defendants Sosa and Azente retaliated against him by simply reviewing and/or denying his administrative grievances fails to state a claim. *See Pratt*, 65

F.3d at 806 (plaintiff bears the burden of pleading the "absence of legitimate correctional goals" for the conduct about which he complains); *see also Burgos v. Canino*, 641 F. Supp. 2d 443, 455 (E.D. Pa. 2009) ("The mere denial of grievances does not rise to the level of adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights."); *Dicey v. Hanks*, No. 2:14-cv-2018 JAM AC P, 2015 WL 4879627, at *5 (E.D. Cal. Aug. 14, 2015) (collecting cases) ("[D]enial of a grievance neither constitutes an adverse action that is more than de minimis nor is it sufficient to deter a prisoner of "ordinary firmness" from further First Amendment activities."); *accord Wong v. Ponce*, No. 2:16-CV-00501 AC P, 2017 WL 784913, at *6 (E.D. Cal. Mar. 1, 2017); *Morris v. Green*, No. 2:13-CV-0589 JAM CKD P, 2016 WL 4044930, at *4 (E.D. Cal. July 28, 2016); *Payan v. Tate*, No. 1:13-CV-00807 LJO BAM PC, 2017 WL 880422, at *3 (E.D. Cal. Mar. 6, 2017) ("Plaintiff cannot state a claim for retaliation because defendants partially granted and/or denied his prison grievances."), *report and recommendation adopted*, No. 1:13-CV-00807 LJO BAM PC, 2017 WL 1214015 (E.D. Cal. Mar. 31, 2017).

Therefore, the Court finds that Plaintiff has failed to state a retaliation claim against Defendants Sosa and Azente and dismisses those claims without leave to amend. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir.1996) (denial of a leave to amend is not an abuse of discretion where further amendment would be futile).

### 4. February 9, 2016 cell search

Plaintiff claims that on the one year "anniversary" of the cell search conducted in February of 2015 by Defendants Rucker and Figueroa, Defendants Mitchell and Marshall searched "the cell of Plaintiff in retaliation." (FAC at 47.) Plaintiff claims that he had taken medication the evening of February 9, 2016 which caused him to fall asleep. (*See id.* at 48.) Plaintiff believes that "there was an attempt to wake him up" but he "went back to sleep." (*Id.*) While he was asleep Plaintiff "believes he heard the cell door moving and then it eventually shut loudly." (*Id.*) When Plaintiff awoke he discovered that some of his personal property was missing. (*See id.*) He claims when he looked out of his cell he "saw all his personal property laying outside on the dayroom floor." (*Id.* at 49.) Plaintiff

9

alleges that it "struck" him that the building floor officers Marshall & Mitchell came into his cell," while "he was sleeping." (*Id.*)

Based on Plaintiff's speculative factual allegations, the Court finds Plaintiff has failed to state a retaliation claim against Defendants Marshall and Mitchell. First, Plaintiff acknowledges that he was not actually aware that either Defendant was in his cell because he was asleep. Second, there are no plausible allegations that the actions purportedly taken on February 9, 2016 have any nexus to the actions that happened one year prior. *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (plaintiff must allege the protected conduct was a "substantial" or "motivating" factor in the defendant's decision to act). Moreover, Plaintiff fails to identify any "protected conduct" that he was engaged in that allegedly caused Marshall and Mitchell to retaliate against him.

Plaintiff's retaliation claims against Marshall and Mitchell are dismissed for failing to state a claim.

### E. Eighth Amendment claims

As stated above, on February 9, 2016, Plaintiff claims that his cell was searched and personal property was removed from his cell. Included in his personal property, which Plaintiff claims later went missing and never recovered, was "orthopedic shoes." (FAC at 27.) Plaintiff "informed" Defendants Marshall and Mitchell that these shoes were missing and claims "they knew that the orthopedic shoes were ordered by the Doctor and they knew they were needed by Plaintiff for his feet." (*Id.* at 27-28.)

Plaintiff alleges he made numerous attempts to retrieve his personal property from Defendant Marshall but was ignored by Defendant Marshall. *See id.* at 27-29. Plaintiff states that "in 2016 and now, inferences could be drawn from the pleadings that each Defendant Marshall [and] Mitchell purposely threw away Plaintiff's doctor prescribed orthopedic shoes." (*Id.* at 29-30.)

To state an Eighth Amendment deliberate indifference to a serious medical need claim, Plaintiff must first allege he suffered from or faced an objectively "serious medical

need." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248 (9th Cir. 2016). "A medical need is serious when the failure to treat it could result in significant injury or the unnecessary and wanton infliction of pain." *Jett*, 439 F.3d at 1096; *see also McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Here, Plaintiff claims he suffers from an unspecified foot condition requiring orthopedic shoes but he fails to include any further "factual matter" sufficient to show or describe how or to what extent his medical needs were objectively serious. *See McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991) (defining a "serious medical need" as one which the "failure to treat ... could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc) (citing *Estelle*, 429 U.S. at 104); *Iqbal*, 556 U.S. at 678 ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Twombly*, 550 U.S. at 570). The "existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin*, 974 F.3d at 1059-60.

Moreover, even if the Court assumes Plaintiff's medical conditions were "objectively serious," nothing in his FAC supports a "reasonable inference that [any individual] defendant" acted with deliberate indifference to his plight. *Iqbal*, 556 U.S. at 678. Plaintiff admits that he is speculating that Defendants threw away his shoes. (*See* FAC at 30.) Plaintiff claims that Defendants intentionally "interfere[ed] with his treatment once prescribed" from "2014 through 2018 and now" but other than losing his shoes, he does not allege that he was ever denied the ability to seek medical care. Plaintiff does not allege that Defendants ever interfered with any attempts, nor does Plaintiff allege he every

11

3:18-cv-00512-WQH-AGS

made any attempts, to seek replacement of these shoes through the prison's medical department.

Inadvertent failures to provide adequate medical care, mere negligence or medical malpractice, delays in providing care (without more), and differences of opinion over what medical treatment or course of care is proper, are all insufficient to constitute an Eighth Amendment violation. *Gamble*, 429 U.S. at 105-07; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

To state an Eighth Amendment claim, Plaintiff must include "further factual enhancement," *Iqbal*, 556 U.S. at 678, which demonstrates Defendants' "purposeful act or failure to respond to [his] pain or possible medical need," *and* the "harm caused by [this] indifference." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing *Jett*, 439 F.3d at 1096). Defendants' acts or omissions must entail more than Plaintiff alleges in his FAC—an isolated act of alleged negligence and/or lack of due care. *See Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); *Wilhelm*, 680 F.3d at 1122.

Therefore, the Court dismisses Plaintiff's Eighth Amendment claims for failing to state a claim upon which relief may be granted.

### III. Conclusion and Order

Good cause appearing, **IT IS HEREBY ORDERED** that:

1. The Court **DISMISSES** Plaintiff's FAC for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b) and for violating Rule 8 of the FRCP.

2. The Court **GRANTS** Plaintiff thirty (30) days leave from the date of this Order to file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading

supersedes the original."); *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled."). In addition, Plaintiff's Amended Complaint must comply with Rule 8 of the FRCP and S.D. Cal. CivLr 8.2(a).

3. The Clerk of Court is directed to mail Plaintiff a court approved form civil rights complaint.

**IT IS SO ORDERED**.

Dated: 9/5/18

HON. WILLIAM Q. HAYES
United States District Judge