NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Stephen DRAGASITS,<br><br>Plaintiff,<br><br>v.<br><br>T. RUCKER, et al.,<br><br>Defendants. | Case No.: 18-cv-0512-WQH-AGS<br><br>**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS (ECF No. 29) AND PLAINTIFF'S MOTION FOR LEAVE TO AMEND (ECF No. 38)** |

A prisoner claims that guards confiscated his prescribed orthopedic shoes, which ultimately led to him rupturing his Achilles tendon. He sued them for deliberate indifference to his serious medical needs, among other claims. The guards now move to dismiss much of the complaint.

## **BACKGROUND**[1]

On February 9, 2016, plaintiff Stephen Dragasits was sick in his prison bed at R.J. Donovan Correctional Facility when two correctional officers—defendants Marshall and Mitchell—searched his cell and confiscated his orthopedic shoes. (ECF No. 18, at 34-35.)

---

[1] As required at this early stage, this Court accepts "all factual allegations in the complaint as true and constru[es] them in the light most favorable to the nonmoving party." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016).

Dragasits was prescribed these shoes to remedy a chronic foot condition that otherwise caused him "substantial" pain. (ECF No. 18, at 11, 37; ECF No. 11, at 432, 447, 467.)

For the rest of that day, and for months thereafter, Dragasits attempted to present property receipts for his shoes to the prison guards, but they refused to look at them. (ECF No. 18, at 38.) Dragasits specifically told Marshall and Mitchell that the prison doctor prescribed those shoes to alleviate his foot pain. (*Id.* at 37.) Although the guards had access to systems to confirm Dragasits's medical needs, they refused to verify his prescription or to return his specialized shoes. (*Id.* at 37-38.) They also waited six months to provide Dragasits a cell-search inventory, listing the shoes among the confiscated items. (*Id.* at 3, 38.)

Without his prescribed shoes, Dragasits's painful foot condition deteriorated until his Achilles tendon ruptured. (ECF No. 18, at 3; ECF No. 11, at 503.)

## **DISCUSSION**

### A.     **Motion to Dismiss Standard**

This Court may dismiss a case for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss, this Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). But a plaintiff must do more than allege conduct that is merely possible; he must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists when the plaintiff lays out facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When a plaintiff is proceeding pro se, the Court has an obligation "to construe the pleadings liberally" and to afford the plaintiff "the benefit of any doubt." *Martinez v. Barr*, 941 F.3d 907, 916 (9th Cir. 2019) (citation omitted).

2

## B. Count One: Eighth Amendment Deliberate Indifference

Deliberate indifference to a prisoner's serious medical needs constitutes the "unnecessary and wanton infliction of pain" prohibited by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). This includes steps taken by prison guards to "intentionally deny[] or delay[] access to medical care or intentionally interfer[e] with the treatment once prescribed." *Id.* A claim of deliberate indifference has two distinct elements: a "serious medical need" and the "deliberate indifference" of prison officials. *Id.* at 104.

### 1. *Serious Medical Need*

Defendants do not seriously contest Dragasits's assertion of a serious medical need, and instead focus on the "deliberate indifference" element. (*See* ECF No. 29, at 4-5.) Dragasits has, in fact, pleaded a "serious medical need," which is established if the failure to treat the condition "could result in further significant injury or cause the unnecessary and wanton infliction of pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quotation marks omitted). A serious need for medical treatment may be indicated by a condition which "significantly affects an individual's daily activities," the "existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment," or by "the existence of chronic and substantial pain." *Id.*

All three indicators are present here. In his complaint, Dragasits describes "deformed toes and bony protrusions" that caused "extreme pain." (ECF No. 18, at 3.) According to his medical record, health professionals found his condition worthy of comment and treatment, as he was prescribed special orthopedic shoes. (ECF No. 18, at 11; ECF No. 11, at 439, 444, 447.) And Dragasits describes pain that "progressively became worse" after the confiscation of his shoes. (ECF No. 18, at 3.) Thus, Dragasits has alleged a serious medical need.

### 2. *Deliberate Indifference*

Dragasits must still demonstrate that prison officials responded to his serious medical need with "deliberate indifference." *See Farmer v. Brennan*, 511 U.S. 825, 834

(1994). This requires more than an "ordinary lack of due care." *Id.* at 835. Rather, a "defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need[.]" *Actkinson v. Vargo*, 284 F. App'x 469, 472 (9th Cir. 2008). "[A]llegations that a prison official has ignored the instructions of a prisoner's treating physician are sufficient to state a claim for deliberate indifference." *Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999).

This is exactly what Dragasits describes. Marshall and Mitchell confiscated Dragasits's prescribed orthopedic shoes. (ECF No. 18, at 34.) Dragasits informed them that the shoes were "ordered by the prison doctor to alleviate foot pain," and that he had receipts for the confiscated property. (*Id.* at 38.) While Marshall and Mitchell had the ability to verify this prescription, they still did not return the shoes. (*Id.* at 37.) And for months, neither Marshall nor Mitchell accepted the property receipts from Dragasits, "making it impossible to recover [his] property . . . ." (*Id.* at 38.) Far from the "single isolated act of taking one item" that defendants claim occurred here (ECF No. 29, at 5), Dragasits's complaint describes the refusal of prison guards—over the course of several months—to acknowledge, inquire into, or respond to his claims that the shoes were necessary to alleviate his foot pain. (*See* ECF No. 18, at 37-38.)

So, Dragasits has properly stated a claim that defendants were deliberately indifferent to his serious medical need. *See Goods v. L.A. Cty. Sheriff*, No. CV 11-2948-JGB (RNB), 2014 WL 2533777, at *9 (C.D. Cal. May 29, 2014) (finding a "triable issue of fact" as to defendant guards' awareness of risk when "plaintiff apprised them that the orthopedic shoes he was wearing had been given to him by his jail doctor"); *Wakefield*, 177 F.3d at 1165 (holding that plaintiff stated a claim of deliberate indifference by alleging that prison officials "failed to provide Wakefield with the psychotropic medication the prison doctor had determined that he needed" and "refused to contact the prison medical staff to inquire into the location of that medication within the prison, or to make any other effort on Wakefield's behalf").

4

1  Thus, defendants' motion to dismiss the deliberate indifference claim should be
2  denied.

3  **C.    Count Three: California Government Code § 845.6 Violation**

4  Defendants next argue that Dragasits's failure to comply with the California Tort
5  Claims Act bars his state law claims.

6  **1. *California Tort Claims Act***

7  The CTCA sets out certain steps a plaintiff must take before filing a lawsuit for
8  money or damages against a public entity or employee. Cal. Gov't Code § 900, et seq. One
9  of these requirements is that the plaintiff file a claim with the Victim Compensation and
10 Government Claims Board within six months of the cause of action accruing. Cal. Gov't
11 Code § 915(b) (2011) (amended 2016). Compliance with the claim presentation
12 requirement is an "element that a plaintiff is required to prove in order to prevail." *Del Real*
13 *v. City of Riverside*, 95 Cal. App. 4th 761, 767 (2002). So, a plaintiff must allege in his
14 complaint "facts demonstrating or excusing compliance with the claim presentation
15 requirement." *State of Cal. v. Super. Ct.*, 32 Cal. 4th 1234, 1243 (2004). Failure to do so
16 "is fatal to the cause of action and results in the dismissal of the state law claim."
17 *Bloodworth v. Krall*, No. 09-cv-2671-MMA-CAB, 2011 WL 1043726, at *7 (S.D. Cal.
18 Mar. 22, 2011); *see also State of Cal.*, 32 Cal. 4th at 1243 (failing to allege facts regarding
19 claim presentation renders complaint "subject to a general demurrer").

20 Dragasits may have properly filed his claim, but his complaint includes no mention
21 of such efforts.[2] Thus, he has failed to allege an element of his state law causes of action,

---

[2] Defendants claim that Dragasits "admits in the [Second Amended Complaint] that he failed to comply with the Government [Tort] Claims Act." (ECF No. 29, at 6.) But the accompanying citation reveals nothing bearing on this issue. (*See id*. (citing ECF No. 18, at 37-38).) To the extent Dragasits addresses his attempts to comply with any administrative requirements, the Court finds that those efforts relate to Dragasits's claims regarding the February 9, 2015 search of his cell, not the one conducted on the same date in 2016. (*See* ECF No. 18, at 31.) Thus, Dragasits has not admitted noncompliance, but rather has simply failed to allege facts demonstrating or excusing compliance.

and his state law claims should be dismissed. But since "a court should grant leave to amend, unless amendment would be futile," the Court must consider the substance of his state law claims. *Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 429-30 (S.D. Cal. 2017).

### 2. *California Government Code § 845.6 Failure to Furnish Medical Care*

Public employees are generally not liable for an injury "caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody." Cal. Gov't Code § 845.6. But section 845.6 provides a limited exception to public employee immunity "(1) where the employee knows or has reason to know of the need (2) of *immediate* medical care and (3) fails to *summon* such care." *Watson v. State of Cal.*, 21 Cal. App. 4th 836, 841-42 (1993); *see also Lawson v. Super. Ct.*, 180 Cal. App. 4th 1372, 1385 (2010) ("[L]iability under section 845.6 is limited to serious and obvious medical conditions requiring immediate care."). The mere presence of a medical condition is not enough to trigger section 845.6; the plaintiff must have an "immediate need for medical care that [defendants] knew (or should have known) of." *Anaya v. Marin Cty. Sheriff*, No. 13-cv-04090-WHO, 2015 WL 1407362, at *6 (N.D. Cal. Mar. 27, 2015).

Courts have applied section 845.6 in situations when prisoners have either notified guards of an immediate medical problem, or when that problem should have been apparent under the circumstances. *See Quinn v. Fresno Cty. Sheriff*, No. 1:10-cv-01617-OWW-SMS, 2011 WL 444999, at *10 (E.D. Cal. Feb. 6, 2011) (finding an immediate and obvious medical need when defendant "knew Plaintiff needed daily doses of prescription heart medications"); *Ales v. City of Santa Ana*, No. 10-cv-01090-CJC-RNBx, 2011 WL 13225045, at *2 (C.D. Cal. Jan. 11, 2011) (holding that plaintiff's broken nose, broken orbital socket, and bruising were "serious and obvious injuries" so as to "establish that [defendants] had reason to know that he was in need of 'immediate medical care.'"); *Zeilman v. Cty. of Kern*, 168 Cal. App. 3d 1174 (1985) (finding a triable question of fact as to "whether plaintiff's use of crutches and her apparently agitated, emotional and weakened condition should have given rise to knowledge of her need for immediate medical care"); *Hart v. Orange Cty.*, 254 Cal. App. 2d 302, 307-08 (1967) (upholding

sufficiency of evidence supporting section 845.6 judgment when "custodians were helping [prisoner] to walk," jail officials "recognized the possibility of illness" and noted that he "did not have the appearance of the 'standard' drunk," but left him overnight in a drunk cell).

But when the condition at issue was either non-emergent or unknown to prison officials, courts have regularly dismissed those claims. *See Anaya*, 2015 WL 1407362, at *6 (dismissing prisoner's claims that she was denied medication and psychiatric counseling, because she failed to allege facts showing an "immediate" need for medical attention); *Watson*, 21 Cal. App. 4th at 842-43 (affirming dismissal when prison guards could not have known of inmate's need for immediate medical care and could not have been expected to diagnose his Achilles tendon rupture, since he was "able to walk" and merely "complained that his ankle was tender").

(a) *Confiscation of Prescribed Shoes*

Dragasits's complaint, as written, cannot support such a claim. Dragasits notified prison guards that he had a foot-related medical need after they confiscated his shoes. (*See* ECF No. 18, at 37-38.) But he fails to explain why those guards should have realized his need was immediate. His Achilles tendon injury does not appear to have been diagnosed until almost a year later, in January 2017. (*See* ECF No. 11, at 495.) And after the confiscation, Dragasits continued to walk around, bringing his property receipts to Marshall's office and apparently carrying on with his regular prison schedule. (*See* ECF No. 18, at 37-38.)

So, while Dragasits may have been denied medical care, and while such a denial may violate the Eighth Amendment, section 845.6 liability requires more. Dragasits must allege facts showing that his medical needs were immediate, and that prison guards knew or should have known of his immediate need.

(b) *Failure to Summon Care During Cell Search*

Dragasits's claim regarding his sickened state during the cell search is also insufficient, but for a different reason. Dragasits contends that, during the search, he was

7

in the cell the entire time and "so badly sick that [he] could not get up." (ECF No. 18, at 5.) He was feeling poor earlier in the day—apparently with the "flu" (*id.* at 35)—and some of his proscribed medication caused him further drowsiness. (*Id.* at 33.) So, he struggled to speak when the guards performed the "Count," and was largely unconscious for the subsequent search without either guard checking on him or seeking immediate medical attention. (*See id.* at 34 (claiming that all he heard was the "cell door moving, and then it eventually shut loudly").) Certainly, the failure to summon assistance for a non-responsive inmate may state a claim under section 845.6 in some circumstances. *See, e.g.*, *Frary v. Cty. of Marin*, 81 F. Supp. 3d 811, 842-43 (N.D. Cal. 2015) (holding that a genuine jury issue existed regarding a guard who "took no action to summon medical help or to inform her fellow deputies that [plaintiff] would not wake despite her yelling and hard knocking at his door" and the inmate later died). But here, Dragasits does not allege that he was actually harmed by the lack of immediate medical care. According to his complaint, he was awake a few minutes after the search, and does not mention suffering any ill effects without medical care. (*See id.* at 35-38 (describing his attempts to regain the things taken from him during the search that same day and the days immediately following without any mention of harm from the lack of immediate medical care).) Without some harm as a result of defendants' failure, he has not stated a claim. *See Anaya*, 2015 WL 1407362, at *6 (holding that an inmate failed to state a section 845.6 claim because she failed to "describe how the failure to provide her access [to medical care] caused her specific harm."). So this claim should be dismissed, but Dragastis should be provided an opportunity to amend to add any harm that he may have suffered as a result of the failure to summon immediate medical care during the search.

**D.     Medical Malpractice**

Defendants also move to dismiss Dragasits's medical malpractice claim. But the Court does not read Count Three as raising a standalone medical-malpractice claim. Instead, Dragasits's only allegation appears to be that defendants violated California Government Code Section 845.6 by failing to summon assistance when he was sick in bed

8

and by not returning his orthopedic shoes. (*See* ECF No. 18, at 20.) The only time Dragasits references medical malpractice in Count Three is in the section heading "MEDICALLY NEGLIGENT AND MALPRACTICE IN VIOLATION OF CAL. GOV. CODE § 845.6." (*Id.* at 19.) Nowhere does he allege the elements of medical malpractice.

Thus, defendants' motion to dismiss the medical malpractice claim should be denied as moot.

### E. Count Four: California Constitution, Art. I, §§ 15 and 17

Finally, defendants move to dismiss Dragasits's claims under the California Constitution, regarding his rights to due process (Cal. Const. art. I, § 15) and to be free from cruel and unusual punishment (Cal. Const. art. I, § 17). Defendants argue that no private right of action exists under those California Constitution sections.

#### 1. *Private Right of Action for Damages*

When determining whether an action for damages exists in a provision of the California Constitution, a court must engage in a two-step inquiry. *Katzberg v. Regents of Univ. of Cal.*, 29 Cal. 4th 300, 317 (2002). First, the court must look at the language and history of the provision for an affirmative intent to authorize a claim for damages. *Id.* If no such intent is present, it must then consider whether to recognize a right to damages, based on whether "an adequate remedy exists, the extent to which a constitutional tort action would change established tort law, and the nature and significance of the constitutional provision." *Id.*

Neither sections 15 nor 17 of the California Constitution permit an action for damages. The history and language of the sections is devoid of any suggestion of a private right of action, and there is an adequate remedy in section 1983 for the same claims. *Reinhardt v. Santa Clara Cty.*, No. C05-05143 HRL, 2006 WL 662741, at *8 (N.D. Cal. Mar. 15, 2006) (finding no damages remedy under section 15 because there was no "intent to include a damages remedy, and because there are adequate alternative forms of relief (habeas corpus and the Bane Act)."); *Giraldo v. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 255 (2008) (finding no damages remedy under section 17 since there is "nothing

9

to suggest that the voters of California intended to create a private right of action" and plaintiff had "adequate alternative remedies available").

So, Dragasits's claims for damages under the California Constitution should be dismissed. And because any amendment to the facts underlying this claim could not cure the lack of a private right of action for damages, the dismissal should be with prejudice (that is, without leave to amend). *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (allowing dismissal without leave to amend because "amendment[] would fail to cure the pleading deficiencies and [the] amendment would be futile.").

### 2. *Private Right of Action for Declaratory and Injunctive Relief*

While neither sections 15 nor 17 of the California Constitution support claims for money damages, Dragasits also seeks injunctive and declaratory relief. (ECF No. 18, at 24.) "Even in the absence of a private right of action for damages, an individual may maintain an action for equitable relief for ongoing violations of the Constitution." *Giraldo*, 168 Cal. App. 4th at 257; *see also Katzberg*, 29 Cal. 4th at 307 ("[L]ike many other constitutional provisions, [article I, section 7(a)] supports an action, brought by a private plaintiff against a proper defendant, for declaratory relief or for injunction."). Here Dragastis asserts that defendants subjected him to cruel and unusual punishment when they confiscated his prescribed orthopedic shoes. (*See* ECF No. 18, at 11, 20, 21.) He has not yet received them back, and he asks for their return as injunctive relief. (*Id.* at 40.) He also seeks a declaratory judgment regarding the illegality of defendants' actions. (*Id.* at 22.) So, while his claims for damages under the California Constitution should be dismissed, his claims for any equitable relief should survive. To that extent, defendants' motion to dismiss should be denied.

### F. Motion to Amend

In response to defendants' motion to dismiss, plaintiff recently moved to file a third amended complaint. (ECF No. 38.) But this Court is already recommending that plaintiff be provided an opportunity to amend his complaint, except for certain claims that would

10

be futile to amend. And plaintiff does not request an opportunity to bring any new claims. (*See id.*) So, plaintiff's motion to amend should be denied as moot.

## CONCLUSION

This Court recommends that:

1. Defendants' motion to dismiss Count I should be **DENIED**, as plaintiff successfully states a claim for an Eighth Amendment violation.
2. To the extent that defendants seek to dismiss an unpleaded claim of medical malpractice in Count III, defendants' motion should be **DENIED as moot**. Otherwise, defendants' motion to dismiss Count III should be **GRANTED with leave to amend**, as plaintiff fails to state a claim for a violation of California Government Code Section 845.6.
3. Defendants' motion to dismiss Count IV should be **DENIED**, to the extent it seeks to dismiss plaintiff's request for declaratory and injunctive relief under article I, sections 15 and 17 of the California Constitution. But to the extent that defendants seek to dismiss plaintiff's request for monetary damages in Count IV, defendant's motion should be **GRANTED without leave to amend** (that is, **GRANTED WITH PREJUDICE**).
4. Plaintiff's motion to amend should be **DENIED as moot**.
5. Plaintiff must amend his complaint within 30 days of the District Judge's adoption of this Report or the District Judge's allowing further amendment.

Within 14 days of service of this report, the parties must file any objections to it. *See* 28 U.S.C. § 636(b)(1). The party receiving any such objection has 14 days to file any response. Fed. R. Civ. P. 72(b)(2).

Dated: January 17, 2020

_____
Hon. Andrew G. Schopler
United States Magistrate Judge